UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:21-CR-00074-DCR-EBA-1

(Related Civil Action No. 5:24-CV-00277-DCR-EBA)

UNITED STATES OF AMERICA,                                                      PLAINTIFF,


V.                                **REPORT AND RECOMMENDATION**


BUD HEMBREE,                                                                  DEFENDANT.


\*\*\* \*\*\* \*\*\* \*\*\*

Bud Hembree, a federal prisoner, brings this action under 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his conviction and sentence. [R. 260]. The Court recognizes that Hembree is proceeding *pro se* and construes his petition more leniently. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381–83 (2003).

### FACTS AND PROCEDURAL HISTORY

Between November 2020 and February 2021, Hembree and several others engaged in a conspiracy to distribute fentanyl in Fayette and Madison County, Kentucky ("the Conspiracy"). [R. 231 at pgs. 19–20]. In December 2020, law enforcement began investigating Hembree and his co-conspirators after receiving information about their plans and becoming aware of several fatal drug overdoses in Madison County. [R. 226 at pg. 5–6].

On the night of December 14, 2020, Hembree was pulled over by a Kentucky State Trooper for a traffic violation. [*Id.* at pg. 6]. As a result of the stop, Hembree was arrested for drug possession. [*Id.*]. After being taken to the Madison County Detention Center (MCDC), Hembree was again searched, and MCDC personnel discovered "an undetermined amount of an unknown

substance" concealed on Hembree's person. [*Id.*]. After identifying the substance as a mixture of various drugs, the MCDC deputy jailer charged Hembree with two counts of trafficking in a controlled substance (methamphetamine and cocaine) and one count of possession of a controlled substance (heroin). [*Id.*]. While incarcerated at MCDC, law enforcement began to monitor Hembree's phone calls in furtherance of their investigation into the Conspiracy. [*Id.*]. The substance of these phone calls allowed investigators to discover more information about the Conspiracy, including Hembree's leadership role in it. [*Id.*].

On June 17, 2021, a federal grand jury returned an indictment against Hembree and his co-conspirators on several federal charges flowing from the Conspiracy. [R. 1]. Hembree specifically was charged with the following: (1) conspiracy to distribute 40 grams or more of a mixture of a substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vi), 846; and (2) knowingly and intentionally possessing with intent to distribute a quantity of a mixture or substance containing a detectable amount of fentanyl in violation of 21 U.S.C. § 841(a)(1). [*Id.*]. Eventually, Hembree moved for rearraignment to plead guilty without a plea agreement, [R. 149], and he pled guilty to the counts of the indictment with which he was charged. [R. 153].

Hembree was originally scheduled to appear for sentencing on August 26, 2022. [*Id.*]. As part of its opposition to Hembree's objections to the Pre-Sentence Investigation Report (PSR), [R. 226], the United States filed synopses of recorded jail phone calls Hembree made while incarcerated at MCDC. [R. 194; R. 196]. Hembree then orally moved to continue sentencing so that he could review these recordings to dispute the drug amount attributable to him because he felt the synopses provided by the United States needed additional context. [R. 203; R. 235 at pgs. 3–4]. The Court granted the motion and rescheduled his sentencing hearing for October 3, 2022. [R. 203].

On September 1, 2022, Hembree's counsel—per his request—moved to withdraw. [R. 208]. The Court granted this motion, and Hembree was appointed CJA counsel. [R. 209]. Two weeks later, Hembree again moved to continue sentencing, but the Court denied the motion because he had already been given sufficient time to review the jail phone calls. [R. 210; R. 211]. Hembree subsequently withdrew his objections to the PSR, [R. 212], and the parties entered a joint factual stipulation concerning the contents of those calls after copies of the recordings were filed into the record. [R. 213; R. 217]. On October 4, 2022, the Court sentenced him to 230 months imprisonment. [R. 219].

Hembree subsequently filed a Section 2255 motion to vacate, set aside, or correct his sentence. [R. 260]. The United States filed a response opposing Hembree's motion. [R. 270]. Hembree failed to file a timely reply, and the time to do so has passed. [*See* R. 272]. The matter is thus ripe for review.

## LEGAL STANDARD

A motion brought pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction. A prisoner has a statutory right to collaterally attack his conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). For a federal prisoner to prevail on such a claim, he bears the burden of showing that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003), *cert. denied*, 540 U.S. 1133 (2003). If the prisoner alleges constitutional error, he must establish by a preponderance of the evidence that the error "had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). Alternatively, if he alleges a non-constitutional error, he must establish "a fundamental defect which inherently results in a complete

miscarriage of justice . . . an error so egregious that it amounts to a violation of due process." *Id.* at 488 (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

ANALYSIS

For the reasons articulated below, the undersigned recommends that Hembree's Section 2255 motion be denied. In reaching this recommendation, the undersigned concludes that: (1) Hembree cannot challenge the sufficiency of the evidence underlying his guilty plea because he failed to enter into a written guilty plea reserving this right; but even if he had, the Court properly determined that there was sufficient evidence to support his guilty plea; (2) the Court properly determined that Hembree possessed the requisite mens rea to be charged under both Counts One and Two; and (3) Hembree's failure to provide sufficient evidence demonstrating that his counsel performed deficiently or caused him actual prejudice belies his ineffective assistance of counsel claims.

**A. Sufficiency of the Evidence**

Hembree first challenges the sufficiency of the evidence for his conviction. Specifically, Hembree argues that the underlying facts of his guilty plea as to Count One were not established beyond a reasonable doubt. [R. 260 at pg. 5]. In response, the United States avers that, even though the amount of fentanyl possessed by Hembree was not "conclusively established," Hembree nonetheless admitted that the amount of fentanyl he possessed was at least 40 grams. [R. 270 at pg. 10]. Thus, because the amount of fentanyl Hembree possessed was established by a preponderance of the evidence and Hembree necessarily waived his right to a jury trial by pleading guilty, the United States contends that the underlying facts did not have to be established beyond a reasonable doubt. [*Id.* at pgs. 9–10].

Where a Defendant fails to "reserve[e] in writing the right to have an appellate court review an adverse determination of a specified pre-trial motion," FED. R. CRIM. P. 11(a)(2), "a voluntary

and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction.'"

*United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008) (quoting *United States v. Pickett*, 941

F.2d 411, 416 (6th Cir. 1991)). Here, Hembree's claim must fail because he pled guilty without a

written plea agreement, [*see* R. 153 at pg. 1], thereby waiving his right to challenge the sufficiency

of the evidence. *See Martin*, 526 F.3d at pg. 932 (citing FED. R. CRIM. P. 11(a)(2)) ("This Circuit

has specifically interpreted Rule 11(a)(2) to bar a defendant's challenge that evidence was

insufficient to support a conviction, absent a conditional plea that specified the issue for

preservation on appeal."). Moreover, because attacking the sufficiency of the evidence is an issue

which can be raised only on appeal, a Section 2255 motion is not the proper vehicle to bring such

a challenge. *See United States v. Woolard*, No. 2:13-CR-39-DLB-12, 2015 WL 13036946, at *3

(E.D. Ky. June 10, 2015) (citing *Stephan v. United States*, 496 F.2d 527, 528–29 (6th Cir. 1974)).

But even if this Court were to consider Hembree's challenge to the sufficiency of the

evidence supporting his guilty plea, his claim would still fail because he expressly admitted to the

facts and elements for each of the charges under oath during the Rule 11 plea colloquy.[1] To be

sure, the Court went through the charges and underlying factual allegations to which Hembree

plead guilty with him during his plea colloquy. [R. 231 at pgs. 18–22]. The United States

summarized its position regarding the facts it would offer to prove Hembree's guilt for Count One,

had the matter proceeded to trial, as follows:

> As to Count 1, the United States would offer proof that between the two dates listed
> in the indictment . . ., Mr. Hembree, along with several of his co-defendants, . . .
> arranged to purchase fentanyl in Madison County and other counties adjacent to
> Madison County and distribute that fentanyl in Madison County. The amount of
> fentanyl attributable to Mr. Hembree was more than 40 grams during the
> conspiratorial time period listed in the indictment.

---

[1] "Rule 11 of the Federal Rules of Criminal Procedure requires a judge to address a defendant about to enter a plea
of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as
a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002).

[*Id.* at pgs. 19–20]. The Court expressly asked Hembree whether he agreed with that factual summary, and he unequivocally agreed. [*Id.* at pg. 20]. The Court then went further, asking Hembree to summarize in his own words "what it was that you did to be guilty of these charges." [*Id.*]. In response, he stated that he "conspired with another person to distribute fentanyl" and, although he "didn't know the exact amount," he agreed that the conspiracy resulted in "40 grams or more [of fentanyl] being possessed with the intent to distribute by one or more persons in the conspiracy." [*Id.* at pg. 21].

Furthermore, when calculating drug quantity, courts may "make a reasonable estimate based on physical evidence or testimony." *United States v. Tisdale*, 980 F.3d 1089, 1096 (6th Cir. 2020). A court's reasonable estimate is not error where supported by a preponderance of the evidence. *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008). Moreover, "[a] criminal 'defendant may be sentenced based upon quantities of drugs attributable to other members of a conspiracy, provided the district court finds that those quantities were known . . . or were reasonably foreseeable' to the defendant." *Tisdale*, 980 F.3d at 1097 (quoting *United States v. Moss*, 9 F.3d 543, 552 (6th Cir. 1993)).

Given the numerous co-conspirators involved and Hembree's leadership role in the Conspiracy, the Court would have been hard pressed to conclude that Hembree—though lacking specific knowledge of the amount of fentanyl being distributed—could not have reasonably foreseen that the amount of fentanyl to be distributed would exceed 40 grams or more. [*See* R. 231 at pgs. 18–20]; *see also United States v. Gardner*, 32 F.4th 504, 525 (6th Cir. 2022) (finding no error where district court determined that the quantities attributable to the defendant were reasonably foreseeable given the defendant's leadership role and general involvement in carrying out the conspiracy). In addition, the exchange between the Court and Hembree during the plea colloquy presents as strong evidence in support of the Court's drug calculation. *See Blackledge v.*

*Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). Accordingly, Hembree's challenge to the sufficiency of the evidence underlying his guilty plea as to Count One must fail.

### B. Mens Rea

Hembree also argues that the Court erred in accepting his guilty plea under Rule 11 because there was no factual basis to conclude that he possessed the requisite mens rea. [R. 260 at pg. 7]. In response, the United States points to the transcript of his rearraignment, asserting that Hembree's admissions in open court to the facts underlying his conviction conclusively established that he possessed the requisite mens rea. [R. 270 at pg. 12 (citing R. 231 at pgs. 20–22)].

Hembree's claim fails for much the same substantive reasons as did his challenge to the sufficiency of the evidence. Indeed, as noted above regarding Count One, Hembree expressly agreed with the United States' alleged facts it offered in support of his guilty plea at the plea colloquy. [*See* R. 231 at pgs. 19–20]. In the same exchange, the Court also went through the charges and underlying acts regarding Count Two. [*Id.* at pg. 19]. Similarly, the Court asked the United States to summarize its position regarding the facts it would offer to prove Hembree's guilt for Count Two, and it responded as follows:

> With respect to Count 2, the government would prove that on or about December 14th, 2020, Mr. Hembree possessed approximately 17 grams of fentanyl; 17 grams is too large for personal use. And the evidence surrounding his possession that he possessed the fentanyl found on his person with the intention to distribute [it] to other individuals.

[*Id.* at pg. 20]. Hembree agreed that the United States' summarized factual allegations as to Count 2 were true. [*Id.*]. Moreover, the Court also expressly asked Hembree whether he knew he possessed fentanyl when he was arrested on December 14, 2020. [*Id.* at pg. 22]. Much like

before, Hembree unequivocally responded in the affirmative. [*Id.*]. Regarding both Count One and Two, the Court was satisfied with Hembree's responses during the plea colloquy and accepted his guilty plea, finding it to be "knowing" and "voluntary." [*Id.* at pgs. 22–23]. The record thus conclusively demonstrates that the Court established that Hembree possessed the requisite mens rea to be charged under both Counts One and Two. Accordingly, Hembree's argument to the contrary necessarily fails.

### C. Ineffective Assistance of Counsel

Finally, Hembree argues that his counsel was ineffective because he failed to allow him an opportunity to review jail phone calls that were admitted as direct evidence against him. [R. 260 at pg. 4]. Hembree claims that these calls could have served as evidence at trial and, had he had the chance to review them, would have enabled him to make a more informed decision on whether to accept the government's plea offer. [*Id.*]. In response, the United States avers that this claim is contradicted by Hembree's statements during his rearraignment and the fact he withdrew his objections to the Presentence Investigation Report. [R. 270 at pgs. 7–8]. In light of these purported contradictions, the United States asserts that Hembree cannot demonstrate that his counsel was objectively deficient. [*Id.*]. But even if he could demonstrate that his counsel was objectively deficient, the United States contends that Hembree's argument must fail because there is no evidence that any deficiency caused Hembree actual prejudice. [*Id.* at pg. 8–9].

### *1.*

To successfully assert ineffective assistance, Hembree must demonstrate two essential elements for each claim: (1) deficient performance by counsel and (2) how "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (stating that "[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable").

First, regarding deficient performance, reviewing courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." *Id.* To show that representation fell below an objective standard of reasonableness, Hembree must articulate specific acts or omissions that demonstrate how counsel's performance fell "outside the wide range of professionally competent assistance." *Id.* at 690. In other words, Hembree bears the burden of showing that his counsel "made errors so serious that the counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. While reviewing Hembree's ineffective assistance of counsel claims, the Court must make "every effort" to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

Second, Hembree must establish prejudice by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of his proceedings would have been different. *Id.* at 694–95. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (citing *Strickland*, 466 U.S. at 696)). "When deciding ineffective-assistance claims, courts need not address both components of the [deficient performance and prejudice] inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697. Indeed, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691). "Counsel is constitutionally ineffective only if performance below the professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

*2.*

Hembree's theory of ineffective assistance rests on his counsel's alleged failure to permit him to review the recorded jail calls before he entered his guilty plea. [R. 260 at pg. 4] Hembree avers that, had he been given the opportunity to review these calls, he may have decided to go to trial rather than plead guilty. [*Id.*].

Here, Hembree has failed to meet the "high bar" of demonstrating that his counsel was ineffective. *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Courts should not upset a plea solely because of post-hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiency." *Lee v. United States*, 582 U.S. 357, 369 (2017). Rather, courts "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* Hembree's rearraignment occurred on May 13, 2022. [R. 153]. During his rearraignment, Hembree had the following exchange with the Court:

> THE COURT: Have you had an opportunity to review the indictment and also to discuss it with your attorney?
> [HEMBREE]: Yes, sir.
> THE COURT: Have you discussed not only the charges that have been made against you, but the case in general with [your attorney]?
> [HEMBREE]: Yes, sir.
> THE COURT: *And are you satisfied with the advice and the representation that [your attorney] has given you to this point in the case?*
> [HEMBREE]: *Yes, sir.*

[R. 321 at pg. 7 (emphasis added)]. Hembree later confirmed that he was voluntarily pleading guilty and not because of any threat, promise, or other outside pressure. [*Id.* at pg. 8]. Accordingly, because the record clearly reflects that Hembree was satisfied with his counsel's performance at the time of his plea, his factually unsupported, post-hoc argument to the contrary is unavailing. *See Blackledge*, 431 U.S. at 74.

But even assuming, *arguendo*, that Hembree's counsel was constitutionally deficient, his claim of ineffective assistance of counsel nonetheless fails because he cannot demonstrate any actual prejudice. While deficient performance in the guilty plea context follows *Strickland*'s

general rule, actual prejudice is shown by demonstrating "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Other than claim that the phone calls could have been used as exculpatory evidence at trial or, at the very least, inform his decision on whether to plead guilty, Hembree's theory relies on pure speculation and is not otherwise grounded in any specific facts tending to show that he there is a reasonable probability he suffered actual prejudice. *Richter*, 562 U.S. at 111–12 (2011) (citing *Strickland*, 466 U.S. at 696) ("The likelihood of a different result must be substantial, not just conceivable."). Thus, Hembree's claim that his counsel was ineffective for failing to allow him to listen to jail calls prior to entering a guilty plea must fail.

3.

Hembree also asserts that his counsel permitted "structural errors" to occur throughout his criminal proceedings. [R. 260 at pg. 8]. Beyond this general accusation, Hembree specifically points to counsel allowing him (1) to plead guilty for a drug amount which was improperly attributed to him, and (2) to plead to a statutory penalty. [*Id.*]. In response, the United States avers that the plain record wholly refutes Hembree's arguments. [R. 270 at pgs. 12–14].

Regarding alleged "structural errors" Hembree claims his counsel permitted, [R. 260 at pg. 8], such an argument is unavailing because it is wholly conclusory and presented without merit. Moreover, as discussed above, Hembree openly admitted under oath to conspiring to distribute fentanyl and, while he couldn't be sure of the exact amount, agreed with the Court that the Conspiracy involved at least 40 grams of fentanyl. [R. 231 at pgs. 20–21]. 40 grams was the amount required to be convicted under Count One, *see* 21 U.S.C. § 846, and the Court reasonably determined that the drug quantity met the statutory minimum given Hembree's testimony and the physical evidence before it. *Tisdale*, 980 F.3d at 1096. Thus, for all the reasons discussed above,

the weight was properly established by the Court. Moreover, because the Court properly determined that he had conspired to distribute 40 or more grams of fentanyl, Hembree cannot show that his pleading to a statutory penalty was error or that it caused him prejudice. Accordingly, Hembree's claims that his counsel was constitutionally deficient must fail because they are wholly refuted by the record.

### CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find that the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (stating that issuance of a Certificate of Appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039–40 (2003). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005).

Here, Hembree has not made a "substantial showing" as to any claimed denial of his constitutional rights. Moreover, the Court also believes that reasonable jurists would not find its determination on the merits debatable. Therefore, this Court recommends that the District Court deny a Certificate of Appealability.

### CONCLUSION

Upon review of the record, and for the reasons stated herein, and in accordance with Rule 10 of the Rules Governing Section 2255 Habeas Cases, **IT IS RECOMMENDED** that:

1.  Hembree's § 2255 petition, [R. 260], be **DISMISSED WITH PREJUDICE**; and

2.  A Certificate of Appealability be **DENIED** as to all issues raised, should Hembree so

request.

\*\*\* \*\*\* \*\*\* \*\*\*

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition.  Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived.  *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984).  General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal.  *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).  A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(1).

Signed February 11, 2025.



**Signed By:**

*Edward B. Atkins*  𝓔𝐵𝐀

**United States Magistrate Judge**